UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALAN BASSANI,<br><br>    Plaintiff,<br><br>    v.<br><br>R. SUTTON, YAKIMA COUNTY SHERIFF'S DEPARTMENT, and YAKIMA COUNTY,<br><br>    Defendants. | NO. CV-08-3012-RHW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Defendants' Motions for Summary Judgment (Ct. Rec. 34) and to Strike Declaration in Opposition to Motion (Ct. Rec. 61),[1] and Plaintiff's Motion for Leave to File First Amended Complaint (Ct. Rec. 54). A hearing on these motions was held on April 20, 2010. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Leave to Amend.

## BACKGROUND

On December 2, 2004, Defendant Sutton, an Animal Control Officer with Yakima County, seized two of Plaintiff's dogs, known as Tequila and Steve. Defendant Sutton was responding to a citizen's report that he had been menaced by

---

[1] This motion challenges the propriety of Plaintiff's submitted deposition excerpts because they were not certified. Plaintiff cured this deficiency by submitting certified excerpts. Therefore, the Court denies the motion as moot.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 1

dogs as he ran past Plaintiff's house on Gun Club Road in Yakima County. Tequila and Steve were known to Defendant Sutton because they had each been allegedly involved in incidents of violence which resulted in their designation as "dangerous dogs," for which Plaintiff was cited and paid fines. Defendant Sutton declares that when he approached Plaintiff's house on December 2, 2004, both Tequila and Steve were off Plaintiff's property, unrestrained and at large. He reports receiving no response when he knocked on Plaintiff's door, and consequently impounded the dogs. Plaintiff disputes that the dogs were off his property, alleging that "it was not possible that his dogs were not chained because they were always chained up all the time." (Plaintiff's Statement of Facts, Ct. Rec. 41, p. 22, ¶ 25.c). Plaintiff believes Defendant Sutton went on to his porch and unchained the dogs himself before impounding them.

After the dogs were seized, Plaintiff was cited with Yakima County Code dangerous dog infractions in a case initiated by Deputy Prosecuting Attorney ("DPA") Christine Rosenberger. Plaintiff contested the infractions in Yakima County District Court. On January 24, 2005, District Judge McCarthy found that Plaintiff had committed two violations. DPA Rosenberger then moved to euthanize the dogs, and Plaintiff moved for their release. On January 31, 2005, Judge McCarthy ordered that Steve be euthanized and Tequila be released no earlier than March 2, 2005. DPA Rosenberger informed Defendant Sutton of the Judge's order, but did not provide him with a copy.

Defendant Sutton declares that he did not know the effective date of the order. He declares that he did not want to release Tequila until Plaintiff could show he was actually prepared to control her. He further declares that he discussed his concerns with DPA Rosenberger, who agreed and advised him "that he should not release Tequila until he was satisfied that [Plaintiff] was prepared to actually control her." (Defendant's Statement of Facts, Ct. Rec. 35, p. 13, ¶ 38). In her deposition, DPA Rosenberger testified that she did not recall "any conversation

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** \* 2

with Mr. Sutton where I would have told him not to release a dog." (Decl. of William Picket, Ex. C, Ct. Rec. 42-3, p. 63).

On March 10, 2005, Plaintiff's counsel sent a letter to the shelter where Tequila was being housed complaining about the failure to release Tequila. Counsel sent a copy to DPA Rosenberger. On March 16, 2005, Defendant Sutton attempted to have Plaintiff or his wife sign a Dangerous Dog Registration form. Plaintiff did not appear, and his wife refused to sign the form. Tequila remained impounded.

On March 25, 2005, Plaintiff filed a petition in Yakima County Superior Court for a writ of mandamus to order Defendants to release Tequila. Attached to the petition is a declaration by Plaintiff's counsel, in which he relates his discussions with DPA Rosenberger about Tequila's release and declares: "When contacted about the release of the dog, Deputy Rosenberger indicated that Mr. Bassani could go back to court if he wanted his dog." (Decl. of L. Peterson, Ex. J, Ct. Rec. 35-4, p. 64). On March 28, 2005, DPA Rosenberger called Defendant Sutton and told him to release Tequila, which he did. Plaintiff took judgment in his mandamus action on April 8, 2005, and acknowledged full satisfaction of that judgment on May 4, 2005.

Plaintiff filed this lawsuit on February 8, 2008. The Complaint claims money damages under 42 U.S.C. §§ 1983, 1985, and 1988, alleging violations of his Fourth and Fourteenth Amendment rights. Defendants moved for summary judgment on February 8, 2010, arguing: (1) Plaintiff's lawsuit is barred under Washington State law because it is a lawsuit for damages based on the same facts as a prior mandamus proceeding; (2) Defendant Sutton is entitled to qualified immunity; and (3) Plaintiff cannot establish that a Yakima County custom or policy was the moving force behind any constitutional violation. Plaintiff responded on March 1, 2010, arguing: (1) the mandamus proceeding was limited to Tequila, and could not bar any claims related to Steve; (2) Defendant Yakima

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 3

County violated Plaintiff's due process rights by failing to follow Washington law in declaring Plaintiff's dogs "dangerous"; (3) Defendant Sutton was not entitled to qualified immunity; and (4) Defendants conspired to deny Plaintiff due process and equal protection in declaring his dogs to be "dangerous."

On March 11, 2010, Defendants filed a reply memo arguing that the bulk of Plaintiff's argument is based on alleged facts and legal rulings outside the scope of the Complaint. The same day, Plaintiff filed a motion for leave to amend his complaint. The proposed First Amended Complaint ("FAC") sets forth a host of new facts not alleged in the Complaint, including numerous allegations related to the designation of Steve as dangerous and later court proceedings in which that designation was vacated. The FAC also explicitly sets forth the legal theories on which Plaintiff relies in his opposition to Defendants' motion for summary judgment. Defendants opposed the motion for leave to amend.

## STANDARD OF REVIEW

**1. Leave to Amend**

After responsive pleadings are served, a party may only amend its complaint after obtaining leave of the Court or consent from the adverse party. Fed. R. Civ. P. 15(a). Rule 15(a) provides that a trial court shall grant leave to amend a pleading freely "when justice so requires." The Supreme Court offered the following factors to consider when determining whether to grant leave to amend a complaint:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182. The factor of prejudice to the opposing party carries the greatest weight. *Eminence Capitol*, 316 F.3d at 1052.

**2. Summary Judgment**

Summary judgment shall be granted when "the pleadings, depositions,

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** \* 4

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to (2) any material fact and that (3) the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "material fact" is determined by the substantive law regarding the legal elements of a claim. *Id.* at 248. If a fact will affect the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth, then it is material. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby,* 477 U.S. at 248.

The moving party has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial." *Id.* Summary judgment is appropriate only when the facts are fully developed and the issues clearly presented. *Anderson v. American Auto. Ass'n*, 454 F.2d 1240, 1242 (9th Cir. 1972). "Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

**1. Motion for Leave to Amend**

First, the Court will discuss the differences between the two complaints in more detail. The first substantive allegation in the original Complaint is that

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 5

Defendant Sutton "made an unreasonable seizure of [Plaintiff's] property." (Ct. Rec. 1, p. 2). Under the Facts section, the Complaint alleges that Defendant Sutton seized two dogs belonging to Plaintiff and that one of them was ordered to be released, but Defendant Sutton refused. The Complaint also alleges that Defendant Yakima County had duties to supervise Sutton and exercise reasonable care, both of which were breached because "Defendants had no legal cause or excuse to refuse to release plaintiff's dog." (Ct. Rec. 1, p. 5). The Complaint does not identify the second dog, advance any allegations related to the second dog, or challenge any process by which either dog was declared "dangerous" (in fact, the designation of the dogs as "dangerous" is not disclosed in the Complaint).

The first substantive allegation in the FAC is that Defendants "made an unreasonable seizure and ongoing detention of [Plaintiff's] property, known as Steve and Tequila, without due process." (Ct. Rec. 54-1, p. 2). The Facts section of the FAC goes into much greater detail than the original Complaint. Among the new allegations are: Defendant Sutton promised to "make it all go away" if Plaintiff would sign over his dogs to Sutton so Sutton could kill them; the January 2005 orders finding Steve had committed an offense and ordering his euthanization were eventually vacated; the Yakima County Superior Court found that Yakima County did not follow the required notice and procedures under state law before designating Steve as "dangerous"; the "dangerous" designation was vacated by the state in 2006; Defendants have always failed to follow proper procedures in declaring dogs to be "dangerous" and still continue to do so; and Defendants violated the Fourth and Fourteenth Amendments by unlawfully seizing Steve and Tequila and declaring them as "dangerous" without due process of law.

Plaintiff argues that he disclosed the new factual and legal allegations in the FAC to Defendants as early as December 16, 2008, in both an interrogatory response and during Plaintiff's deposition. (Plaintiff's Memo in Support, Ct. Rec. 56, pp. 3-5). Therefore, Plaintiff argues that he should be permitted to amend his

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 6

complaint to "conform to the evidence" under Fed. R. Civ. P. 15(a)(2). Plaintiff cites no authorities other than the rule itself in support of his motion.

Defendants argue that the Court should analyze Plaintiff's motion under Fed. R. Civ. P. 16(a)(4), which provides that a scheduling order "may be modified only for good cause and with the judge's consent." Under this rule, the liberal standard under Rule 15 does not apply; rather, if the party seeking leave to amend "was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). Defendants rely on a case in which the Ninth Circuit upheld a district court's denial of leave to amend under Rule 16 where plaintiffs sought to amend their complaint well after the deadline to do so set in the district court's scheduling order. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000). There, the Circuit held that plaintiffs failed to show diligence because they failed to move to amend their complaint until they replied to defendant's motion for summary judgment, despite knowing of the relevant facts and legal theories for years before the summary judgment motion was filed. *Id.* at 1295. Morever, the Circuit held that defendants would be prejudiced because allowing amendment of the complaint would require reopening discovery and further delaying the case. *Id.*

Defendants concede that, unlike *Coleman*, the Court's scheduling orders in this case did not contain an explicit deadline to amend pleadings. Nonetheless, Defendants argue that the Court's five previous scheduling orders imposed numerous deadlines (including discovery cutoff and deadlines for filing and serving dispositive motions) that clearly presuppose the closure of the pleadings. Defendants do not dispute receiving notice during discovery of Plaintiff's intent to pursue claims not alleged in the original Complaint, but defense counsel declares that he informed Plaintiff's counsel on several occasions that Defendants considered the new claims outside the scope of the Complaint, and that Defendants would oppose any attempt to amend the Complaint. (Third Decl. of L. Peterson, Ct Rec. 74, pp. 1-2). Defendants argue that they thus limited the scope of their

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 7

discovery to the facts and legal theories disclosed in the original Complaint.

At oral argument, Plaintiff's counsel denied that defense counsel told him on December 16, 2008, that Defendants considered Plaintiff's claims regarding Steve and the 2005 and 2006 appeals to be outside the scope of the complaint. However, Plaintiff's counsel acknowledged that he was aware of Defendants' position by at least August 2009.

Plaintiff's primary argument in reply is that the new claims advanced in the FAC were within the scope of the original Complaint. However, the Court finds this argument to be inconsistent with Plaintiff's motion for leave to amend. If the FAC's new factual allegations and causes of action were within the scope of the original Complaint, there would be no need to amend the Complaint to "conform to the evidence." Moreover, the Court finds that the original Complaint is reasonably susceptible to only one reading: an allegation that Defendants violated Plaintiffs' constitutional rights by failing to release Tequila in violation of a court order. This allegation is narrowly defined and well-pled, and clearly puts Defendants on notice of the nature of Plaintiff's sole claim. In contrast, the FAC opens new areas of factual and legal inquiry, both before and after the December 2, 2004, seizure of Plaintiff's dogs that forms the genesis of the original Complaint. Plaintiff challenges the designation of both dogs as "dangerous," a designation that, according to Defendants' statement of facts, occurred months if not years before December 2, 2004. (Ct. Rec. 35, ¶¶ 16-24). Plaintiff also challenges the post-seizure judicial and administrative process, raising new questions of absolute and qualified immunity. Both new challenges potentially implicate new decisionmakers not currently named as Defendants. None of these new areas of factual and legal inquiry are even arguably within the scope of the original Complaint.

With the exception of the fact that this Court's scheduling orders do not set an explicit deadline for amending pleadings, the Court finds the facts of this case to be substantially identical to those in *Coleman*, 232 F.3d at 1294-95. It was only

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 8

after both sides had fully briefed Defendants' motion for summary judgment – a motion that properly focused only on the allegations in the Complaint – that Plaintiff sought leave to amend the Complaint to allege facts and legal theories that have been known to him since 2005. Plaintiff has offered no reason for the extreme delay in seeking leave to amend. *Cf. Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (excusing delay in moving to amend where a party "offered substantial competent evidence to explain the delay," including the substitution of counsel and a belated factual discovery).

Plaintiff argues that, unlike *Coleman*, these new claims came as no surprise to Defendants, pointing to his interrogatory responses and deposition testimony. However, the Court finds the interrogatory responses and deposition testimony to be both vague and conclusory, setting forth only ill-defined allegations of due process violations. Most importantly, Plaintiff does not dispute that during discovery Defendants made clear their position that these new claims were outside the scope of the Complaint, that Plaintiff would need to amend the Complaint, and that Defendants would oppose that effort. Those facts are strikingly similar to the facts in *Johnson*, 972 F.2d at 609 (holding that "[f]ailing to heed [opposing counsel's] clear and repeated signals" that a complaint was deficient does not constitute the kind of diligence necessary to show "good cause" to permit amendment under Rule 16).

Under Plaintiff's theory, Defendants should have moved for summary judgment not only on the causes of action disclosed in the Complaint, but also on the vague and conclusory claims set forth in Plaintiff's interrogatory responses. This would have required Defendants to speculate as to the precise form of those claims and the facts that Plaintiff intended to offer in support. Plaintiff cites no authority, and the Court finds none, that would require Defendants to engage in this level of speculation in a dispositive motion. Rather, Defendants properly focused their motion for summary judgment on the only causes of action that were

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 9

actually pending before the Court.

At oral argument, Plaintiff argued that Defendants would suffer no prejudice if Plaintiff was allowed to amend his complaint. To the contrary, the Court finds that the waste of time and resources required for Defendants to prepare and submit another motion for summary judgment to address Plaintiff's new claims constitutes the kind of prejudice the case law instructs the Court to recognize. Therefore, just as in *Coleman*, permitting amendment here would prejudice Defendants and also waste the Court's resources. *See also Johnson*, 975 F.2d at 609; *Giddings v. Vision House Prod.*, 584 F. Supp. 2d 1222, 1226 (D.C. Ariz. 2008) (denying leave to amend a complaint to allege a new legal theory six months after a discovery cutoff).

Whether Plaintiff's motion is analyzed under Rule 15 or Rule 16, the Court finds that permitting amendment at this time would be inappropriate given Plaintiff's undue delay and the undue prejudice to Defendants. Accordingly, the Court denies Plaintiff's motion and limits its consideration of Defendants' summary judgment motion to the claims advanced in the original Complaint.

**2. Motion for Summary Judgment**

As noted above, Defendants present three arguments: (1) Plaintiff's lawsuit is barred under Washington State law because it is a lawsuit for damages based on the same facts as a mandamus proceeding; (2) Defendant Sutton is entitled to qualified immunity; and (3) Plaintiff cannot establish that a Yakima County custom or policy was the moving force behind any constitutional violation.

*A.     Res Judicata*

There is no dispute that Washington law determines whether [a party]'s state and federal causes of action are barred as res judicata. Under Washington law, a party seeking mandamus relief may recover in the same action all damages which are the natural and proximate result of the official misconduct. Further, since res judicata bars an action where the relief sought could and should have been determined in a prior action, failure to seek damages recoverable in an earlier mandamus proceeding may bar a later action for those damages.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 10

*Norco Const., Inc. v. King County*, 801 F.2d 1143, 1146 (9th Cir. 1986) (holding that claims for damages that could not have been raised in an earlier mandamus proceeding were not barred by res judicata) (internal quotations and citations omitted).

Based on this theory, Defendants argue that Plaintiff could and should have raised in the earlier mandamus proceeding the federal causes of action he now raises in this action. In no uncertain terms, the Complaint seeks damages caused by Defendant Sutton's failure to release Tequila. Defendants argue that all of the facts that form the basis for that claim – i.e., the facts that Judge McCarthy ordered Tequila to be released on March 2, 2005, but Defendant Sutton refused to do – were known to Defendant at the time he petitioned for a writ of mandamus. Defendants also argue that Plaintiff could have challenged the failure to release Tequila before Judge McCarthy himself, and sought damages in that action, rather than filing the mandamus petition.

In response, Plaintiff argues that the mandamus proceeding had nothing to do with Steve, and cannot bar claims related to Steve. However, Plaintiff essentially concedes that in the mandamus proceeding he could have sought damages proximately caused by the failure to release Tequila. (Plaintiff's Memorandum in Opposition, Ct. Rec. 44, p. 12). Plaintiff does argue that res judicata would not bar any claims related to Defendants' alleged due process violations in designating Tequila as "dangerous." Finally, Plaintiff argues that Defendants waived the affirmative defense of res judicata by failing to list it in their Answer.

Defendants reply that the claims related to Steve and the alleged due process violations in designating Tequila as "dangerous" are outside the scope of the Complaint and the Court should not consider them. As for waiver, Defendants rely on a Ninth Circuit case holding: "Although Rule 8 requires affirmative defenses to be included in responsive pleadings, absent prejudice to the plaintiff an affirmative

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 11

defense may be plead for the first time in a motion for summary judgment." *Ledo Financial Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997) (affirming a district court's decision to allow an affirmative defense first pled in a summary judgment motion where defendant gained no tactical advantage by an inadvertent late filing). Defendants argue that there can be no showing of prejudice here because defense counsel informed Plaintiff's counsel on July 21, 2009, that he intended to assert a res judicata defense.

      The Court agrees with Defendants on all accounts and grants their motion for summary judgment on this basis. Plaintiff concedes the meat of Defendants' res judicata argument, and the other claims he advances are not before the Court. Finally, Plaintiff had ample notice that Defendants would assert this defense, so the Court sees no prejudice in considering it at this time.

      *B.*     *Qualified Immunity*

      "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808, 815 (2009). Thus, "[t]he principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 823.

      Defendants argue that Defendant Sutton is entitled to qualified immunity because he reasonably relied on DPA Rosenberger's advice to keep Tequila impounded until Plaintiff satisfied Sutton that he could control Tequila. In support, Defendants point to recent Ninth Circuit case law holding that police officers are entitled to rely on legal advice they obtain from prosecuting attorneys, and that while following such advice does not automatically establish qualified immunity, it can help to show an officer's actions were reasonable. *Ewing v. City of Stockton*, 588 F.3d 1218, 1231 (9th Cir. 2009).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 12

In response, Plaintiff argues that qualified immunity does not apply because a reasonable officer should have known that ignoring a court-ordered release date violates a known legal right. Plaintiff also argues that "DPA Rosenberger denies that she provided any advice to ACO Sutton." (Plaintiff's Memorandum in Opposition, Ct. Rec. 44, p. 18).

Defendants reply that Plaintiff has not disputed Defendant Sutton's claim that he did not know Judge McCarthy's order became effective on March 2, 2005, so Plaintiff cannot establish a knowing violation of a court order. Defendants also take issue with Plaintiff's characterization of DPA Rosenberger's deposition testimony: Rosenberger did not deny that she gave such advice, only testified that she could not recall.

Again, the Court concludes that Defendants are correct in all respects. Plaintiff fails to create a genuine issue as to either of the two key facts here: Sutton did not know the effective date of the order, and he relied on Rosenberger's advice to maintain custody of Tequila. The fact that Rosenberger does not remember giving that advice does not actually controvert Sutton's declaration that it occurred. In addition to Defendants' correct characterization of Rosenberger's deposition testimony, the Court also notes that Plaintiff's counsel declared in 2005 that Rosenberger had told him Plaintiff could go back to court if he wanted his dog. That declaration is perfectly consistent with and in fact fully supports Defendant Sutton's version of events. Therefore, it is undisputed that Defendant Sutton relied on Rosenberger's advice, and Plaintiff has presented no argument as to why that reliance would be unreasonable. The Court thus finds that Defendant Sutton is entitled to qualified immunity.

C. *Municipal Liability*

Finally, Defendants argue that Plaintiff cannot set forth any evidence of a policy of Yakima County that was the moving force behind a constitutional violation.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 13

1    A local government may be liable under 42 U.S.C. § 1983 when an official
2 policy or custom is the "moving force" behind a constitutional violation. *Monell v.*
3 *Dep't of Social Services of the City of New York*, 436 U.S. 658, 694-95 (1978).
4 Therefore, plaintiffs seeking to establish municipal liability must identify both a
5 policy or custom, and a causal link between the policy and an injury. *Board of the*
6 *County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04
7 (1997).

8    Defendants argue that Plaintiff can show only one violation of a court order,
9 the one at issue here, and have identified no evidence establishing a custom or
10 policy behind that violation. The Sheriff of Yakima County declares that the
11 Sheriff Department's policy is to follow all court orders, and as far as he is aware,
12 the matter of Tequila being held in custody contrary to a court order is unique.
13 (Defendants' Memo in Support, Ct. Rec. 36, pp. 13 and 15).

14    Plaintiff's response again focuses entirely on the issue of Yakima County's
15 process of declaring dogs to be "dangerous." Plaintiff argues that Yakima County
16 has a history of violating dog owners' due process rights, and that the actions of
17 Animal Control Officers like Defendant Sutton have been repeatedly ratified by the
18 County. Defendants, of course, reply that this issue is not before the Court.

19    The Court again agrees with Defendants. The constitutional violation alleged
20 in the Complaint is that Defendant Sutton violated Plaintiff's Fourth and
21 Fourteenth Amendment rights by failing to release Tequila in violation of a court
22 order. That is the only issue before the Court. Plaintiff does not dispute the
23 Sheriff's characterization of Yakima County's policy of following court orders,
24 and Plaintiff attempts no showing of any pattern of behavior from which the Court
25 could infer a policy or custom. Therefore, the Court concludes there is no genuine
26 issue of fact as to *Monell* liability here.

27    D.    *Additional State Law Claims*

28    Finally, the Court notes that the Complaint asserts state law causes of action

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 14

for negligence, against Defendant Sutton, and negligent supervision, against Defendants Yakima County and Yakima Sheriff's Department. Neither party addresses these claims in their briefs. The Court declines to exercise supplemental jurisdiction over these state law claims.

## CONCLUSION

The Court denies Plaintiff's Motion for Leave to Amend his Complaint because he has made no showing of good cause that would justify permitting amendment at such a late date in the proceedings. The Court grants Defendants' Motion for Summary Judgment because Plaintiff's claims are barred by res judicata, Defendant Sutton is entitled to qualified immunity, and Plaintiff has failed to establish a genuine issue of material fact as to whether a policy of custom of the municipal defendants was a moving force behind a constitutional violation. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Strike Declaration in Opposition to Motion (Ct. Rec. 61) is **DENIED as moot**.

2. Defendants' Motion for Summary Judgment (Ct. Rec. 34) is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiff as to Plaintiff's first two causes of action, under 42 U.S.C. §§ 1983 and 1985 against all Defendants.

4. The Court declines to exercise supplemental jurisdiction over the state law claims and **dismisses without prejudice** Plaintiff's third and fourth causes of action.

///
///
///
///

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 15

1  5. Plaintiff's Motion for Leave to File First Amended Complaint (Ct. Rec. 54) is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order, provide copies to counsel, and **close the file.**

**DATED** this 28th day of April, 2010.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

Q:\CIVIL\2008\Bassani\SJ.ord.wpd

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 16